UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CONNIE T. FREEMAN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: **5:15-CV-00664-RDP** |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OF DECISION**

Plaintiff Connie T. Freeman brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed a Title II application for a period of disability and disability benefits on January 14, 2013, alleging her disability began on September 2, 2011. (R. 162). Plaintiff also filed a Title XVI application for SSI on December 26, 2012, alleging the same onset date. (*Id.*). Both claims were initially denied on February 28, 2013, and on April 5, 2013, Plaintiff filed a written request for hearing. (*Id.*). On May 23, 2014, Plaintiff appeared before Administrative Law Judge ("ALJ") Donna Lefebrye via video hearing. (*Id.*). In her decision, dated June 20, 2014, the ALJ determined that although Plaintiff experienced severe impairments, including

dysphonia, none of her impairments equaled a "listing" found in the "Listings of Impairments." (R. 155). Therefore, the ALJ determined Plaintiff had not been under a disability as defined in the Act from September 3, 2011 through the date of the ALJ's decision. (R. 176).

The record indicates Plaintiff previously filed for disability and DIB on December 23, 2009, alleging disability beginning June 4, 2009. (R. 213). That earlier filed claim was initially denied on July 12, 2010. (*Id.*). Thereafter, Plaintiff filed a written request for a hearing. (*Id.*). She attended a hearing before an ALJ, who found her capable of performing light work, although she was required to avoid concentrated exposure to extreme heat, cold, wetness, and humidity. (R. 220). The decision of the previous ALJ is binding with regards to the earlier determination of disability. (R. 162).

## II.   Facts

At the time of the hearing, Plaintiff was fifty-one years old. (R. 187). She attended school through the seventh grade, and never obtained a GED. (R. 187-188). Plaintiff is divorced and has no children. (R. 168). She currently lives in a mobile home and is in possession of a driver's license, though she only drives once or twice a week. *Id.* Plaintiff is 5'4" and weighs between 100 and 105 pounds. (R. 188). Prior to her alleged disability, Plaintiff worked for twelve or fifteen years (until 2002) at a trailer manufacturing plant. (R. 427). She most recently worked stocking shelves for a grocery store. (*Id*). Her alleged onset of disability is September 2, 2011. (R. 162).

Plaintiff filed for disability based on limitations stemming from Graves' disease,[1] ovarian cancer in remission, depression, mental illnesses, arthritis, fibromyalgia, and osteoporosis. (R. 167). Plaintiff testified that she lost her voice due to the surgical removal of cancer cells on her

---

[1] Graves' disease is a disorder that causes the overproduction of hormones in the thyroid. (R. 193).

2

voice box in 2007. (R. 168). This resulted in a disability called dysphonia.[2] (R. 409). Her inability to maintain lengthy conversation or speak audibly was apparent at the hearing. Plaintiff also testified that her friends and family are often unable to understand her when she speaks to them on the phone. (R. 191).

In May 2012, Plaintiff saw Dr. Harrison Boyd for back pain, and Dr. Boyd prescribed her 10mg of Lortab to be taken twice a day. (R. 169). In October 2013, Plaintiff saw Dr. Faye Wilson, her attending physician, for a burned foot. (*Id*.). At that appointment, Plaintiff did not complain of back pain, myalgia, or arthritis. (*Id*.). On February 21, 2013, Plaintiff saw Dr. Marlin D. Gill for a disability examination. (R. 423). During the examination, she stated that she smokes cigarettes several times a day. (R. 424). However, during the hearing, Plaintiff testified that she had stopped smoking cigarettes approximately a year prior. (R. 188). On February 25, 2013, Plaintiff was interviewed by Dr. John R. Haney, a licensed psychologist, who diagnosed her with depressive disorder, mild to moderate; borderline intellectual functioning or mild mental retardation; attention deficit hyperactive disorder; and anxiety disorder. (R. 427-428). He noted that her ability to function in most jobs would be moderately to severely impaired due to this diagnosis. (R. 428). On February 28, 2013, Plaintiff then saw Dr. Samuel Williams of the state Disability Determinations Services.  His assessment was that Plaintiff had moderate limitations regarding daily living, social functioning, and ability to maintain concentration, persistence, or pace. (R. 166).

Plaintiff repeatedly saw Dr. Wilson throughout 2013 and 2014. At her August 2013 visit with Dr. Wilson, Plaintiff told Dr. Wilson she had experienced hoarseness and difficulty swallowing. (R. 171). Dr. Wilson also noted Plaintiff had decreased breath sounds. (*Id.*).

---

[2] Dysphonia is a disorder of the voice that results in an impaired ability to produce sounds using vocal organs.

3

Plaintiff once again saw Dr. Wilson in April 2014 for back pain. (R. 169). He assessed lumbago and examined pain to palpitation over the low back area. (*Id.*). Plaintiff also complained of anxiety and depression to Dr. Wilson in April 2014, stating that the continued stress had caused her hoarseness to worsen. (R. 171).

Plaintiff currently takes Synthroid for Graves' disease, but testified that as she remains tired throughout the day, she often alternates between sitting and lying down to relieve her fatigue. (R. 168). Plaintiff also takes Advil for osteoporosis and Ativan for depression. (*Id.*). Plaintiff tested positive for a urinalysis drug screening for Methadone in May 2011. (R. 169).

At the hearing, Plaintiff testified that she takes care of her personal hygiene and tends to her home to the best of her ability. (R. 169). She does not shave her legs because it hurts her back, but she is able to bathe and use the toilet on her own. (R. 371). She also takes care of and plays with her pet puppy. (R. 169). The record indicates that she cooks the majority of her food in the microwave because she is unable to cook for herself. (R. 372). Plaintiff shops for her own groceries. (R. 373). She receives a large percentage of assistance from her sister, Ms. Pamela Terry, who testified that Plaintiff has displayed a difficulty getting along with others. (R. 168).

The ALJ denied Plaintiff's request for disability benefits on June 20, 2014. From November 7, 2014 to November 19, 2014, Plaintiff was hospitalized for laryngeal/tracheal carcinoma. (R. 409). She was also diagnosed with accelerated hypertension, chronic obstructive pulmonary disease, altered mental state, anxiety disorder, and attention deficit disorder. (*Id.*). Plaintiff contends that this new cancer diagnosis makes her disability fall within one of the "Listings" provided by the Act, and as such should make her eligible for disability benefits. (*Id.*). She submitted an appeal to the Appeals Council. The Appeals Council affirmed the ALJ's decision on March 11, 2015, reasoning that because the new information about Plaintiff's cancer

diagnosis pertains to the time after the ALJ hearing, it did not affect the ALJ's decision about whether or not Plaintiff was disabled on June 20, 2014. (R. 1-2). Plaintiff then filed this civil action in the United States District Court for the Northern District of Alabama.

## III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). The analysis then proceeds to the second step, in which the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*).

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC

to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.*

If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the first step of the analysis, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of September 30, 2014. (R. 164). By reviewing acceptable medical evidence of Plaintiff, at step two of the analysis the ALJ determined Plaintiff has multiple severe impairments: dysphonia, degenerative disk disease of the lumbar spine, Graves' disease, borderline intellectual functioning, attention deficit disorder, depressive disorder, and anxiety disorder. (R. 165).

Plaintiff contends her vocal box was damaged to the extent that it meets Listing 2.09 because she lacks the ability to produce audible, understandable, or sustainable speech. (R. 165). However, Plaintiff did not have objective evidence from an acceptable medical source to support this contention. (*Id.*). The ALJ also noted that, though severe, her injuries and mental impairments, individually and in combination, did not medically meet or equal the criteria of a listing because she did not have marked restrictions of daily living, in social functioning, or in maintaining concentration, persistence, or pace. (*Id.*). The ALJ also gave great weight to Dr.

Williams's February 2013 assessment that Plaintiff's activities of daily living were only mildly limiting. (R. 166).

At the fourth step of the analysis, the ALJ found that Plaintiff was unable to perform any of her past relevant work as an assembler, inspector, or wire worker. (R. 175). The ALJ made this determination based on the vocational expert's ("VE") assessment that a person with similar limitations as Plaintiff would be unable to work as a stocker or mobile home assembler, in addition to any job that included frequent stooping. (R. 202). The VE also stated that a job as a wire worker would be eliminated because it requires multiple steps and changing variables that would be difficult for someone with Plaintiff's limitations to do. (R. 203-204).

Finally, at the fifth step of the analysis, the ALJ determined that Plaintiff has the residual functional capacity to perform light work. (R. 167). Based on the VE's testimony, the ALJ found that Plaintiff can lift up to twenty pounds occasionally and ten pounds frequently, walk for up to six hours and sit for up to six hours, occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. (*Id.*). Based on Dr. Williams's assessments, the ALJ found that Plaintiff could understand, remember, and complete simple tasks, as well as tolerate casual interactions with co-workers and adapt to change without that causing distress. (R. 174). The ALJ therefore found Plaintiff not disabled within the meaning of Section 1614(a)(3)(A) of the Social Security Act. (R. 177).

**IV.    Plaintiff's Argument for Reversal**

Plaintiff argues that the VE was not sufficiently informed of the extent and scope of Plaintiff's limitations because the ALJ did not incorporate Dr. Haney's assessment of Plaintiff's psychological state into her hypotheticals to the VE. (Pl. Br. 6). Plaintiff maintains that had the ALJ included Dr. Haney's diagnosis of Plaintiff as moderately to severely impaired, Plaintiff

would not have been able to perform substantial gainful work existing in significant numbers in the national economy and therefore would have been entitled to disability benefits. (Pl. Br. 7).

Plaintiff further asserts that her case should be remanded based on her recent laryngeal/tracheal carcinoma diagnosis. As noted above, following the ALJ's September denial of benefits, Plaintiff was hospitalized from November 7, 2014 to November 19, 2014 for laryngeal/tracheal carcinoma. (R. 409). Plaintiff alleges this new medical evidence should have been considered by the Appeals Council and should fall within the cancer "Listings." *Id.* She also argues the evidence of her cancer diagnosis is relevant to the Appeals Council based on the fact pre-cancerous cells were present at the time of the hearing. (Pl. Br. 3). Plaintiff supports this allegation by pointing out that she had pre-cancerous cells present in her larynx prior to her hearing and was hoarse and short of breath throughout the hearing. (Pl. Br. 9).

**V.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and that the ALJ applied correct legal standards.

### A. The ALJ Sufficiently Considered the Relevant Evidence In Her Decision and Adequately Presented the Relevant Evidence to the Vocational Expert Via Hypothetical Circumstances During the Disability Hearing

Plaintiff argues that the ALJ's assessment of her disabilities discredited significant aspects of her medical history, thus causing the VE to make an unfair assessment of her vocational abilities and her RFC. An RFC is an assessment of a claimant's ability to do work despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). In assessing Plaintiff's RFC, the ALJ described a hypothetical person with limitations[3] similar to those of Plaintiff to the VE and asked the VE what types of work such a person would be able to do, or (alternatively) whether such a person would be able to work at all. Plaintiff alleges that the hypotheticals presented by the ALJ effectively discredited Dr. Haney's opinion because they did not incorporate the moderate to severe impairments observed by Dr. Haney. (Pl. Br. 6).

---

[3] Plaintiff notes that her treating physician, Dr. Faye S. Wilson, diagnosed her with ADHD, depression, and anxiety (Pl. Br. 7). However, these diagnoses do not fall under a "Listing" as required by the Act; therefore, these impairments are not an adequate reason for her to receive disability benefits.

9

Significantly, however, the ALJ did not reject Dr. Haney's opinion entirely; rather, she simply did not give it controlling weight because Dr. Haney only examined Plaintiff once. Moreover, as the ALJ noted, Dr. Haney opined that Plaintiff would only be precluded from *most* jobs. (R. 173). This observation of Dr. Haney is not in any way in conflict with the ALJ's decision. The VE explicitly stated the parameters in which a person such as Plaintiff would be able to work, specifically including work environments that were not too hot or cold, humid, or wet. (R. 202). As a matter of logic, the corollary to an opinion that Plaintiff would not be able to function in *most* jobs is that she would be able to function in *some* jobs. At the hearing, the VE provided examples of jobs Plaintiff could work. The VE's suggestion that someone such as Plaintiff could pursue work in light jobs requiring little skill -- such as a sorter, tagger, or bagger (R. 204) -- is in fact consistent with Dr. Haney's assessment of Plaintiff's physical and emotional limitations.

For these reasons, it follows that Dr. Haney's assessment that Plaintiff suffers from moderate to severe impairments does not mean Plaintiff is eligible for disability benefits. The ALJ's findings are supported by substantial evidence.

**B.     There Is No Objective Medical Evidence to Indicate Plaintiff Had Debilitating Cancer During the ALJ Hearing, So the Medical Developments That Have Since Taken Place Are Not Relevant**

Plaintiff argues that her recent carcinoma diagnosis should have been admitted before and considered by the Appeals Council based on the fact that her symptoms were present at the ALJ hearing and that her medical history includes laryngeal carcinoma and hoarseness. She requests her case be reversed and remanded so that a medical expert can testify about whether her cancerous condition existed prior to the ALJ's decision. (Pl. Br. 10). However, the testimony of a medical expert would not change the fact that Plaintiff's condition was not *debilitating* at the

time of the ALJ's decision on June 20, 2014. "The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work, nor does it undermine the ALJ's determination regarding her ability to work." *Robinson v. Astrue*, No. 09-12472, 2010 WL 582617, at *2. The objective medical evidence available at the ALJ hearing indicated that Plaintiff, in her current state, was capable of holding a number of jobs, as verified by the VE.

Regardless of whether cancer was present at the time of the hearing, substantial evidence supports the conclusion that Plaintiff was not disabled within the meaning of the Act as of that time, even if cancer had onset. It is not disputed that she regularly played with her dog, watched TV, and straightened up her house during the relevant time. (R. 196). The fact that she had vocal problems which were evident at the hearing, absent sufficient medical evidence, is insufficient to show she was disabled on or before the date of the ALJ's decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). (Whether claimant was "entitled to benefits during a specific period of time, which was necessarily prior to the date of the ALJ's decision.") The diagnosis does not introduce new evidence to indicate the condition causing her vocal problems (*i.e.*, carcinoma) was more limiting than was perceived by the ALJ. (Dft. Br. 12).

Although the court is sympathetic to Plaintiff's circumstances, the Commissioner's brief accurately states the issue in saying that the court must determine whether Plaintiff's symptoms were so severe that they were disabling on or before the date of the ALJ hearing. (Dft. Br. 11). As Plaintiff was unable to point to evidence showing that she was disabled on or before September 3, 2011, the presence of an actual, subsequent diagnosis does not help her carry her burden. The Commissioner's brief is also correct in noting that the deterioration of a condition previously considered by the ALJ may entitle Plaintiff to benefits in a new application, but does little to change that which was already decided. *Leiter v. Comm'r of Soc. Sec.*, No. 09-15293,

2010 WL 1794177, at *6 (11th Cir. May 6, 2010). The fact that Plaintiff's diagnosis did not occur until after the hearing is unfortunate (to say the least), but there is no objective medical evidence to indicate that the cancer was both present *and* debilitating at the time of Plaintiff's alleged onset of disability. Plaintiff's legal remedy is to reapply for disability benefits, now that she has the cancer diagnosis, the objective medical evidence to prove it, and can point to an updated onset date.

## VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled at the time of her hearing is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 23, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE